# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

**CASE NO. 17-20217-CV-LENARD/GOODMAN**

BAKE HOUSE SB, LLC d/b/a
BAKE HOUSE,

    Plaintiff,

v.

THE CITY OF MIAMI BEACH

    Defendant.

_____/

## ORDER GRANTING MOTIONS TO INTERVENE

The alternative rock group R.E.M. is known for its sometimes inscrutable and enigmatic lyrics, especially for its early songs. In fact, frontman Michael Stipe provided the following explanation of the group's fuzzy lyrics in a 1994 published interview: "I hate to break it to them, but . . . it's just utter nonsense; it's sounds, and it doesn't make sense sometimes, and it doesn't have to."[1] But some of the lyrics to the band's 1994 song "Let Me In" were actually remarkably simple and far from indecipherable: "Heyyyyyy, let me in, yeah yeah yeah / Heyyyyyy, let me in. Let me in."[2]

---

[1]     Staff, *Those Early REM Lyrics? Gibberish, Says Stipe*, THE BUFFALO NEWS, (Nov. 6, 1994), http://buffalonews.com/1994/11/06/those-early-rem-lyrics-gibberish-says-stipe/.

[2]     R.E.M., *Let Me In, on* MONSTER (Warner Bros. 1994).

The concept of being let in is at the heart of the motions to intervene before the Undersigned. Under Federal Rule of Civil Procedure 24, four proposed intervenors want to join this lawsuit, which concerns a City of Miami Beach ordinance that prohibits, among other things, entertainment establishments and the loud playing of music in a Miami Beach neighborhood.

Plaintiff Bake House SB, LLC ("Bake House") owns and operates what it calls "a charming, French themed neighborhood 'brasserie,' situated in the heart of the elegant 'South of Fifth' neighborhood of South Beach[.]" [ECF No. 1-1 ¶ 6]. It describes itself as a "popular brunch venue for locals and tourists alike[.]"[ECF No. 1-1 ¶ 7]. Bake House contends that the City's effort to enforce the ordinance by prohibiting its jazz brunches is unconstitutional, arguing that the law violates its right to play music, which is a means of free speech and expression protected by the U.S. Constitution. [ECF No. 1-1].

The City of Miami Beach (the "City") is the Defendant, and the proposed intervenors are residents, property owners, developers and condominium associations in the Fifth Street neighborhood of Miami Beach. [ECF Nos. 12; 20]. The proposed intervenors are seeking to preserve the ordinance and protect it from Bake House's legal attack. [ECF Nos. 12; 20]. They say they want to protect their quiet enjoyment of the residential neighborhood and their property values, which they maintain would be harmed if Bake House were to prevail. [ECF Nos. 12; 20]. Bake House objects to their

proposed intervention, under both mandatory intervention and permissive, discretionary intervention. [ECF No. 19].

For the reasons outlined in greater detail below, the Undersigned grants the intervention motions. In other words, I will be invoking the words to the song, "Come On In," by country music singer and songwriter Brad Paisley (featuring Buck Owens): "Come on in, come on in / It's so good to see you again / It don't matter where you been / Welcome stranger, come on in."[3]

As explained in this Order, the Undersigned concludes that the proposed intervenors do **not** have grounds to intervene as of right under Rule 24(a)(2) because the City adequately represents their interests. However, the Undersigned also concludes that the proposed intervenors should be permitted to permissively intervene under subsection (b)(1)(B).

Before discussing the factual background, applicable legal principles and legal analysis, the Undersigned will quickly note that this ruling is in the form of an order, rather than a report and recommendations. Although there have been a few contrary published opinions, federal district courts across the country typically treat an intervention motion as a non-case-dispositive motion, which permits a magistrate judge to enter an order (as opposed to a report and recommendations), which is then reviewable under the clearly erroneous or contrary-to-law standard. *See, e.g., WFK &*

---

[3] BRAD PAISLEY, *Come On In*, *on* PLAY (Arista Nashville 2008).

*Assocs., LLC v. Tangipahoa Par.*, No. CIV.A.06-6684, 2007 WL 1537633, at *1 (E.D. La. May 23, 2007); *U.S. v. Brooks*, 163 F.R.D. 601, 603 (D. Or. 1995).

**Factual Background & Procedural History**

Frank DelVecchio; 301 Ocean Drive Condominium Association, Inc. ("301 Ocean"); 321 Ocean Drive Condominium Association, Inc. ("321 Ocean"); and the Continuum on South Beach Master Association, Inc. ("Continuum") (collectively, "Intervenors") are the proposed intervenors. Although the Intervenors filed two separate motions [ECF Nos. 12; 20], they are represented by the same attorney. Moreover, Continuum adopted the motion its co-Intervenors filed. [ECF No. 20, p. 1].

Bake House filed its lawsuit to invalidate Section 142-693(c) of the City of Miami Beach Code, in Miami-Dade Circuit Court, and the City removed the case to federal court. [ECF No. 1]. Section 142-693(c), among other things, prohibits "entertainment establishments" in the South of Fifth neighborhood of the City, and limits the playing of music and certain live instruments in certain restaurants on certain streets. [ECF No. 1-1, p. 6]. The purpose of the ordinance, the Intervenors maintain, is to protect the predominantly residential character of the area, to maintain property values and preserve the residents' quality of life. [ECF No. 12, p. 2].

Bake House says it wants to exercise its "free speech" rights to have a musician play the saxophone in its restaurant, and it explicitly asks the Court to prevent the City from enforcing the zoning prohibition *in its entirety*. [ECF Nos. 1-1; 19]. Intervenors

4

express skepticism about Bake House's "constitutional" attack on the City's duly enacted land-use regulations, flagging Bake House's principals' knowledge of the City's zoning laws; Bake House's explicit acknowledgement during the permitting process that "entertainment," as the City Code defined it, was prohibited; and the principals' ownership of several other restaurants located in areas of the City where the zoning allows entertainment until 5:00 a.m. [ECF No. 12, pp. 7–12].

On January 8, 2017, in response to a complaint by one of the Intervenors, the City's Code Enforcement Department issued citation ZV2017-00674, stating that Plaintiff was violating Section 142.693(c) by playing saxophone music during a Sunday brunch at the Bake House restaurant located at 808 First Street. [ECF No. 1-1, pp. 5–6, 16]. The citation states:

> INSPECTION OF THE ABOVE PREMISES ON THIS DATE DISCLOSES YOU ARE IN VIOLATION OF SECTION 142-693(C) OF THE CITY CODE OF MIAMI BEACH BY: ALLOWING A NON-PERMITTED USE, TO WIT: ENTERTAINMENT ESTABLISHMENTS ARE NOT PERMITTED AS A MAIN PERMITTED OR ACCESSORY USE SOUTH OF 5TH STREET: RE LIVE ENTERTAINMENT.
>
> YOU CAN COMPLY BY: CEASING THE SAID USE IMMEDIATELY UPON RECEIPT OF THIS NOTICE.

[ECF No. 1-1, p. 16].

Plaintiff filed its amended complaint in state court on January 17, 2017, attaching the citation, and alleging that Section 142-693(c) is an unconstitutional infringement on

free speech. [ECF No. 1-1, ¶¶ 20, 25, 27, 28, 31, 32, 34, 36, 41, 42, and 47]. The City removed the case to Federal Court on January 18, 2017. [ECF No. 1].[4]

Intervenors 301 Ocean, 321 Ocean and Continuum are the associations of owners of the units in the residential condominiums located at 301 Ocean Drive, 321 Ocean Drive and 50 and 100 South Pointe Drive, within the South of Fifth Street neighborhood in Miami Beach that is the subject of this lawsuit. [ECF Nos. 12, pp. 2–6; 20, pp. 1–2]. Intervenor Frank DelVecchio, with his wife Marian, purchased a condominium at 301 Ocean Drive, Miami Beach, Florida, on September 6, 1996, and they have continuously resided there since then. [ECF No. 12, pp. 2–3]. In a declaration, Mr. DelVecchio represents that he and his wife invested in a residence in the South of Fifth neighborhood because the zoning code prohibited nightclubs as a main permitted use or accessory use (except for hotels of 250 rooms with access to the club only from the interior lobby). [ECF No. 12, pp. 16–22].

Mr. DelVecchio has served as President of 301 Ocean since 1997. [ECF No. 12, p. 3]. In that capacity, and as an individual, Mr. DelVecchio has testified as an affected party in public hearings before the Miami Beach Planning Board and the City Commission on the ordinances amending zoning South of Fifth, including Ordinance No. 2004-3445, which extended the ban on nightclubs and entertainment establishments

---

[4] The City of Miami Beach Commission later voted to allow Bake House to have a saxophone player on Sundays from 11 a.m. to 2 p.m., with certain other limits, until the litigation is resolved. [ECF No. 12, pp. 13, 71].

6

to restaurants,[5] and other regulations enacted since 1996 affecting the district. [ECF No. 12, p. 3]. Mr. DelVecchio filed the complaint which resulted in the citation attached to Plaintiff's Amended Complaint. [ECF Nos. 12, pp. 12, 21].

David Arditi owns and resides in a condominium at 321 Ocean Drive with his wife, and he is President of 321 Ocean. [ECF No. 12, p. 3]. Mr. Arditi contends that he and his partners developed the 321 Ocean Drive property in 2011 as a residential condominium in large part because of the City's laws that protect the area South of Fifth Street as a predominantly residential neighborhood, including Section 142-693(c)'s prohibition on entertainment south of Fifth Street. [ECF No. 12, pp. 3–4]. His declaration explains that the ban on new entertainment establishments was and remains a selling point in the marketability of units at 321 Ocean, and elsewhere South of Fifth. [ECF No. 14].

Keith Marks, who owns and resides in a condominium at 50 South Pointe Drive, is the President of Continuum, which has hundreds of members. [ECF No. 20]. He notes that "[t]he vast majority of our members paid a substantial premium to buy condominiums in this community, based in part on the primarily residential character of the South of Fifth neighborhood and the protections afforded by the current zoning

---

[5] Intervenors' motion attaches the City's legislative record for Ordinance 2004-3445, including the Planning Department's analysis that restaurants as entertainment establishments "have just as much of a negative impact on the lives of nearby residents" as do stand-alone clubs, and listing 27 commercial establishments in the district that could obtain entertainment licenses if the ordinance was not enacted. [ECF No. 12, pp. 26–38].

7

laws." [ECF No. 20, p. 5]. Mr. Marks also describes the "traffic problems, raucous and delinquent activity, and substantial disturbances for residential and family living" caused by entertainment venues in the neighborhood prior to the enactment of Section 142-693(c). [ECF No. 20, p. 5].

**Legal Principles and Analysis**.

Federal Rule of Civil Procedure 24 provides, in pertinent part:

**(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

\*\*\*

**(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest

**(b) Permissive Intervention.**

**(1) In General.** On timely motion, the court may permit anyone to intervene who:

\*\*\*

**(B)** has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24.

In *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242 (11th Cir. 2002), the Eleventh Circuit articulated the following test for Rule 24(a)(2) intervention:

Before a party can intervene as a matter of right, it must timely move to intervene. The proposed intervenor must show that it has an interest in

> the subject matter of the suit, that its ability to protect that interest may be impaired by the disposition of the suit, and that existing parties in the suit cannot adequately protect that interest.

*Id.* at 1250.

Because Intervenors fail to meet the final factor of whether the existing parties (i.e., the City) can adequately protect their interests, the Undersigned need not spend time addressing the other factors. Instead, I will jump to the final factor: whether the existing parties can adequately protect Intervenors' interests.

Because the Defendant is the City, it is presumed to be an adequate representative of the Proposed Intervenors. *Am. Nat. Bank & Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144, 148 (7th Cir. 1989) (holding that the presumption of adequate representation arises where a City is called on to defend the constitutionality of a section of its Building Code and the official action of one of its commissioners.); *see also Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993) ("This court will presume that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention.").

Where the Government is acting on behalf of a constituency it represents, as the Defendant City is doing here, it is assumed that the government will adequately represent that constituency. *Gonzalez v. Arizona*, 485 F.3d 1041, 1052 (9th Cir. 2007) ("In order to overcome this presumption, **the would-be intervenor must make a very**

**compelling showing that the government will not adequately represent its interest.**") (emphasis added and internal quotations omitted).

Although the Intervenors argue that their burden to show inadequacy of representation is minimal, the Undersigned concludes that they have not met the minimal burden. The cases relied on by the Intervenors do not support their contentions of inadequacy of representation by the City. *See Georgia*, 302 F.3d at 1256 (holding that the government, i.e. State of Florida, met its burden to intervene by showing that its interests in water rights were not adequately represented by the US Army Corps of Engineers); *Clark v. Putnam Cty.*, 168 F.3d 458, 462 (11th Cir. 1999) (holding that black voters seeking to intervene in a challenge to an at-large voting scheme were not adequately represented by the County Commissioners, who represented all residents, and not just the interests of black residents asserting discrimination); *Sierra Club v. Espy*, 18 F.3d 1202, 1207–08 (5th Cir. 1994) (holding that because the government, in a letter, applied an injunction adverse to the timber industry, and had to represent the broad public interest, the government did not adequately represent the economic interests of the timber industry).

The Intervenors' contentions about inadequate representation by the City are vague. For example, in their proposed order, they contend that their "property interests are threatened by Plaintiff's case, whereas the City's interests are political and governmental in nature." [ECF No. 42, p. 11]. This is not persuasive, especially when

intervenors also concede that the City's interests are "not adverse," but merely "different." [ECF No. 42, p. 12]. Under that view, a resident seeking to intervene in a case in which a government (i.e., the federal government, the State, a city, a county, a town, etc.) is a party, would always be able to meet this final factor by merely saying that the government's interests are governmental or political or civic. The requirement would in most circumstances become wholly illusory in cases involving a government as an existing party.

In my view, the interests being pursued by the City are the same as those of the Intervenors. Thus, the Intervenors' argument that the City is not an adequate representative must fail, as evidenced by the results in *Georgia v. U.S. Army Corps of Engineers* and in *Sierra Club v. Espy*.

The Intervenors also rely on *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861 (8th Cir. 1977), but that case is distinguishable because there, the court was faced with a situation where the City Council passed an ordinance that created a temporary moratorium on the construction or establishment of an abortion clinic. *Id.* at 863. While the Court did determine that the City and neighboring property owners had disparate interests, it did so based on the express reasoning that many of the defendants in the case, including all City Council members, the Mayor, and the City Attorney, were all facing personal liability from direct claims of discrimination and bad faith in passing the ordinance that established the moratorium. *Id.* at 870; *see also*

11

*Gautreaux v. Pierce*, 690 F.2d 616, 635 n. 22 (7th Cir. 1982) (expressly distinguishing *Planned Parenthood*, explaining that it involved claims of personal liability against government officials, and denying intervention based on the assertion that a potential for lower property values alone creates disparate interests.).

In this action, there are no such claims of personal liability against any City official. Likewise, there do not appear to be any other indicia of disparate interests to support the contention that the Intervenors do not share the same interests as the City.

The Intervenors further assert that they have disparate or adverse interests based on an interim agreement the City reached with Bake House. The interim agreement is that Bake House is allowed "to have a single unamplified saxophone performer play at a level that does not interfere with normal conversation (ambient level) during brunch (from 11 AM to 2:00 PM on Sundays), during the pendency of this lawsuit[,]" in exchange for waiving claims to damages and litigation costs. [ECF No. 12, p. 71]. However, the City's temporary agreement with Bake House actually suggests the opposite -- that the Intervenors and the City have the same ultimate objective.

In fact, the City Attorney's letter, relied upon by Mr. DelVecchio to suggest disparate interests, provides as follows:

> **The City Attorney's Office will vigorously defend the constitutionality of the City's ordinance**. The suit was filed in State Court but we have removed the lawsuit, which was filed in Miami-Dade County Court, to federal court and **are at this time formulating, preparing, and executing our strategy to defeat this lawsuit in federal court.**

*Id.* (emphasis added).

In addition, the mere fact that the City reached an interim agreement may, at most, reflect a difference of opinion concerning the tactics with which the litigation should be handled -- but a tactical difference does not make inadequate the representation of those whose interests are identical with that of an existing party. *See, generally, Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) ("Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention."). Intervenors have not argued that the interim agreement was illogical, adverse to their interest, indicative of collusion between the City and Bake House or a lack of diligence in protecting City residents, or that it somehow evidences some other type of inadequacy of representation.

The Court finds that the Intervenors have failed to overcome the presumption that the City is an adequate representative of their interests in seeking to uphold the constitutionality of the subject ordinance. *See Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) (denying intervention when the proposed intervenors and government possessed same interest in upholding constitutionality of part of the Federal Elections Campaign Act); *see also U.S. v. City of Miami*, 278 F.3d 1174, 1178 (11th Cir. 2002) (holding that proposed intervenor "**must overcome a presumption**—that it is adequately represented—that arises 'when applicants for intervention seek to achieve the same objectives as an existing party in the case.'")

(quoting *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1477 (11th Cir. 1993)) (emphasis added).

Because the Intervenors have failed to show that the City is an inadequate representative, the Undersigned denies their motions to intervene as a matter of right under Fed. R. Civ. P. 24(a). *See Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1500 (S.D. Fla. 1991) (denying intervention motion because, *inter alia*, the government was an adequate representative, and proposed intervenors did not show collusion between government and plaintiff, adversity to proposed intervenors' position, or any lack of competence on part of government); *see also Am. Nat. Bank & Trust Co. of Chicago*, 865 F.2d at 148 (denying intervention motion because, *inter alia*, the intervening plumbers' union failed to demonstrate that the city would not zealously represent the health interests of its citizens when defending an ordinance regulating the use of materials in construction); *Williams Island Synagogue, Inc. v. City of Aventura*, 222 F.R.D. 554, 557 (S.D. Fla. 2004) (denying intervention motion because the intervenor's "objective through intervention in th[e] litigation [was] to establish that Defendant's denial of Plaintiff's application for a conditional use permit conformed with the requirements imposed by RLUIPA [the Religious Land Use and Institutionalized Persons Act of 2000]. This interest coincides exactly with Defendant's [City of Aventura] own interest in defending its decision-making process.").

But the Intervenors' failure to establish intervention under subsection (a) of Rule 24 does not mean that it cannot establish it under subsection (b), which concerns permissive intervention. *See, e.g., U.S. v. City of Irving, Tex.*, 482 F. Supp. 393, 396–97 (N.D. Tex. 1979) (prohibiting landowners from intervening under Rule 24(a) because the two government plaintiffs adequately protected their interests, but authorizing permissive intervention under 24 (b)).

Under Rule 24(b)(1)(B), the Court may permit a nonparty to intervene in an action when the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "The 'claim or defense' portion of the rule has been construed liberally, and indeed the Supreme Court has said that it 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975) (quoting *Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940)). The intervening party, however, "must demonstrate more than a general interest in the subject matter of the litigation before intervention should be allowed." *Alexander v. Hall*, 64 F.R.D. 152, 157 (D.S.C. 1974). And when exercising its discretion, a district court "can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion [to intervene]." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999); *see also The Travelers Indem. Co. v. Bastianelli*, 250 F.R.D. 82, 85 (D. Mass. 2008) (permitting

15

injured pedestrian to permissively intervene in declaratory judgment action filed by commercial automobile liability insurer involving common question of fact with underlying tort suit -- whether the son was using the truck for business purposes).

It is patently obvious that Intervenors have the same objective as the City in defending the ordinance against a constitutional attack. In addition to sharing the same legal question, the Intervenors share a common factual question. Indeed, one of the Intervenors is the very person who lodged the complaint that started the dispute with the issuance of the citation. [ECF Nos. 12, pp. 12, 21]. As explained in a leading treatise on federal civil procedure, if neighbors are permitted to intervene in an action to set aside a zoning order, then it seems logical that the Intervenors here should be permitted to come into the action.[6] Moreover, Bake House has not demonstrated that permissive intervention would unduly delay or prejudice the rights of the original parties.

Given these circumstances, the Undersigned denies the motions to intervene under Rule 24(a) but grants them under Rule 24(b).

**DONE AND ORDERED** in Chambers, Miami, Florida, on June 20, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

---

[6] 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1911 (3d ed. 2017).

**Copies furnished to:**
The Honorable Joan A. Lenard
All counsel of record